**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RAHN ANDRE JACOBS,** | **:** | **CIVIL NO. 1:CV-13-2066** |
| **Plaintiff,** | **:** | |
| | **:** | **(Judge Kane)** |
| **v.** | **:** | |
| | **:** | |
| **DR. WILLIAM W. YOUNG,** | **:** | |
| **Defendant** | **:** | |

**MEMORANDUM**

Rahn Andre Jacobs ("Jacobs"), currently an inmate confined at the State Correctional Institution at Mahanoy, Pennsylvania, filed this civil rights action pursuant to 42 U.S.C. § 1983. Named as the sole Defendant is Dr. William Young, a physician employed at the Dauphin County Prison ("DCP"), Pennsylvania, Jacobs' former place of confinement. In the complaint, Jacobs alleges that Young was deliberately indifferent to his medical needs in violation of the Eighth Amendment. Presently pending before the Court is Jacobs' motion for the appointment of counsel. (Doc. No. 4.)

## I. Background

Jacobs alleges that upon his arrival at the Dauphin County Prison on July 29, 2011, he was evaluated by a registered nurse. Approximately one week later, he was seen by Dr. Young who questioned him about his medical history. In particular, Jacobs had urethral strictures and had surgery four (4) months prior to his arrival at DCP. He expressed his concern to Defendant Young that he had not been urinating properly and was experiencing pain. No action was taken at this time by Young. (Doc. 1, Compl. at 4.) Four and one-half months later, Jacobs again complained to the medical department, and again no attempt was made to provide him with relief. (Id.)

On January 27, 2012, Jacobs was unable to urinate at all. The medical department notified Dr. Young by phone due to swelling in Jacobs' ankles, legs and face. Young believed Jacobs was "edemic x3." (Id. at 5.) Jacobs claims that he was not provided any further response. As the evening progressed, Jacobs' condition worsened and Young was again called by medical department staff. He issued orders to catheterize Jacobs, but all attempts to do so failed. Jacobs was ultimately transported to Penn State Hershey Medical Center, where his bladder was designated as overextended to the point of rupture. A surgical procedure called a "super pubic catheter" was performed. (Id. at 5-6.) Jacobs returned to DCP the following day.

Jacobs alleges that due to the bladder extension, his kidneys were compromised and he developed "Nephrotic Syndrome." (Id. at 6.) He goes on to detail how ten (10) days following his return to DCP he had to be admitted to the Harrisburg Hospital for several days, and then later admitted to the Hershey Medical Center for twenty-five (25) days due to kidney issues. (Id.)

Jacobs claims that on September 24, 2013, he was examined by Young at DCP. Young stated that he had received specific orders from Jacobs' nephrologist Dr. Alamahad to take blood draws and urine samples from Jacobs once a week. In November of 2013, Jacobs claims that Young ceased consulting with his outside doctors. (Id. at 7.) On January 7, 2013, Jacobs was taken to the Harrisburg Hospital Emergency Room because no one at DCP knew how to change his super pubic catheter. He further alleges that when his catheter was swabbed, it was discovered he had a staph infection and he was prescribed Tylenol 3 with codeine. At DCP, Jacobs continued to complain of pain for a period of two months, until he was finally prescribed Uriquid to fight the infection. (Id.) He states that on March 26, 2013, he was transferred from

DCP to SCI-Camp Hill. After arrival, Jacobs states he had to be taken to Holy Spirit Hospital Emergency Room because the medical department at DCP had failed to change his catheter for two (2) months and he was infected. (Id. at 8.) Based on the foregoing, Jacobs claims that Dr. Young was deliberately indifferent to his serious medical issues. He seeks declaratory, injunctive, compensatory and punitive relief.

Defendant Young has filed a motion to dismiss the complaint and a brief in support of his motion. (Doc. Nos. 12, 14.) Jacobs has not submitted a brief in opposition to the motion.

## II. Discussion

In moving for the appointment of counsel Jacobs argues that: (1) he is unable to afford counsel; (2) he is limited by his imprisonment; (3) a trial will involve conflicting testimony that an attorney is better equipped to handle; and (4) he has not been successful in obtaining the services of an attorney. (Doc. No. 4.)

Although prisoners have no constitutional or statutory rights to appointment of counsel in a civil case, Parham v. Johnson, 126 F.3d 454, 456-57 (3d Cir. 1997), district courts have broad discretionary power to appoint counsel under 28 U.S.C. § 1915(e)(1). Montgomery v. Pinchak, 294 F.3d 492, 499 (3d Cir. 2002)(citing Tabron v. Grace, 6 F.3d 147, 153 (3d Cir. 1993)); Ray v. Robinson, 640 F.2d 474, 477 (3d Cir. 1981). The United States Court of Appeals for the Third Circuit has stated that the appointment of counsel for an indigent litigant should be made when circumstances "indicate the likelihood of substantial prejudice to him resulting, for example, from his probable inability without such assistance to present the facts and legal issues to the court in a complex but arguably meritorious case." Smith-Bey v. Petsock, 741 F.2d 22, 26 (3d Cir. 1984).

The initial determination to be made by the court in evaluating the expenditure of the "precious commodity" of volunteer counsel is whether the plaintiff's case "has some arguable merit in fact and law." Montgomery, 294 F.3d at 499. While Defendant has filed a motion to dismiss Jacobs' complaint on the basis of failure to state a claim upon which relief may be granted, for purposes of this motion the Court will assume that this case has arguable merit in law and the facts.

Next, upon successfully clearing the above hurdle, other factors to be examined are:

1. The plaintiff's ability to present his or her own case;

2. The difficulty of the particular legal issues;

3. The degree to which factual investigation will be necessary and the ability of the plaintiff to pursue investigation;

4. The plaintiff's capacity to retain counsel on his or her own behalf;

5. The extent to which a case is likely to turn on credibility determinations; and

6. Whether the case will require testimony from expert witnesses.

Montgomery, 294 F.3d at 499 (citing Tabron, 6 F.3d at 155-57).

The pending motion fails to set forth any special circumstances or factors that would warrant the appointment of counsel at this time. Tabron, 6 F.3d at 155-56. The pleadings submitted thus far do not contain complicated legal issues. In reviewing the complaint, Jacobs is quite literate and able to litigate this action on his own. The complaint clearly sets forth the inadequate medical care claims he desires to pursue in this matter. Any concern about a trial is premature at this point in the case. It cannot be said, at least at this point, that Jacobs will suffer substantial prejudice if he is required to proceed with the prosecution of his case on his own. This Court's liberal construction of pro se pleadings, Haines v. Kerner, 404 U.S. 519 (1972),

coupled with the apparent ability of Jacobs to litigate this action, weigh against the appointment of counsel. His pending motion will be denied, and he will be directed to file his brief in opposition to Defendant's pending motion to dismiss. If future proceedings demonstrate the need for counsel, the matter may be reconsidered either *sua sponte* or upon a properly filed motion. An appropriate order follows.