IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RAHN ANDRE JACOBS,** | : | CIVIL NO. 1:CV-13-2066 |
| **Plaintiff,** | : | |
| | : | (Judge Kane) |
| v. | : | |
| | : | |
| **DR. WILLIAM YOUNG,** | : | |
| **Defendant** | : | |

### MEMORANDUM

Plaintiff Rahn Andre Jacobs, an inmate currently confined at the State Correctional Institution at Mahanoy, Pennsylvania, filed this civil rights action pursuant to 42 U.S.C. § 1983. Named as the sole Defendant is Dr. William W. Young, the prison doctor at the Dauphin County Prison ("DCP"), Pennsylvania, where the incidents alleged in the complaint occurred. Plaintiff alleges that Dr. Young was deliberately indifferent to his serious medical needs. Presently pending before the Court is Defendant's motion to dismiss the complaint. (Doc. No. 12.) For the reasons that follow, the motion will be denied.

**I.    Allegations in the Complaint**

When Plaintiff arrived at the Dauphin County Prison on July 29, 2011, he was a pretrial detainee. He was evaluated by a Registered Nurse and advised her of his medical issues. The following week, Plaintiff was seen by Defendant Young. Young questioned him about two of his medical issues - urethral strictures and arthritis. Plaintiff informed him that he had surgery approximately 4 months prior to his arrival at DCP, and was concerned because he was not urinating properly, had repeated urinary tract infections, and his urine flow was slow and very painful. He received no treatment in response to his complaints at this time. (Doc. No. 1, Compl. at 4.) About 4½ months later, Plaintiff again reported these concerns to the medical staff, and no

attempt was made to address his problems.  (Id.)

In December of 2011, Plaintiff states that his stream of urine was only a dribble/drops and that he was sluggish.  On January 27, 2012, at approximately 3:30 a.m., he was unable to urinate at all.  He informed a correctional officer of his problem, and he then notified the medical department.  An LPN came to Plaintiff's cell around 6 a.m. and noticed that Plaintiff's ankles, calves, thighs, and face were swollen.  Defendant Young was notified by phone, and his assessment was that Plaintiff was "Edemic x3."  (Id. at 5.)  Although Plaintiff continued to complain that he was unable to urinate, he received no response from the medical department.

At 7 p.m. that evening, Plaintiff and several other inmates complained that he was in need of medical care.  At 8:30 p.m., Plaintiff was escorted to the infirmary and examined by an RN and an LPN.  Both of these individuals agreed that Plaintiff's bladder was overly extended.  Plaintiff was taken back to his cell, and another call was made to Defendant Young.  Plaintiff was again escorted to the medical department at 9 p.m., barely able to walk.  He was informed that Young had issued an order to catheterize him.  All attempts by the medical staff to do so failed.  Plaintiff states that even a pediatric-size catheter was unsuccessful.

A third call was thereafter made to Defendant Young, and Plaintiff was assisted back to his cell.  At 10:15 p.m., Plaintiff was taken to "Receiving and Release" and told he would be leaving the prison to go to the hospital emergency room once the shifts changed at 11:00 p.m. (Doc. No. 1 at 5.)  He was later taken to Penn State Hershey Medical Center where he was seen by  surgeon specialist Dr. Ross Decter.

Upon examination, Dr. Decter questioned Plaintiff's prison escort as to why he was not brought in sooner because his bladder was extended to the point of rupture.  No explanation was

given. A surgical procedure called a "super pubic catheter" was performed in the triage area, as there was no time to wait for an operating room. (Id. at 6.) Plaintiff was admitted to the hospital overnight and returned to DCP the next afternoon.

On February 9, 2012, Plaintiff was ordered released from prison for proper medical care by Judge Andrew Dowling. His kidneys had been compromised due to the over-extension of his bladder, and he had developed Nephrotic Syndrome. His weight had increased from 170 pounds to 226 pounds. Ten days after his release, Plaintiff was admitted to the Harrisburg Hospital for 3 days. He thereafter had follow-up visits with his urologist, and was referred to a nephrologist specialist at Penn State Hershey Medical Center. After conducting some tests, the specialist ordered Plaintiff admitted to the Penn State Hershey Medical Center where he remained hospitalized for 25 days.

On September 24, 2012, Plaintiff was recommitted to DCP to await sentencing. He was screened by the medical department. Defendant Young informed Plaintiff that he had received electronic orders from Plaintiff's nephrologist to take blood and urine samples once per week to check Plaintiff's protein and creatine levels. Young was also told to taper Plaintiff off the medication prednisone. In November of 2012, Young stopped consulting with Plaintiff's outside doctors.

On January 7, 2013, Plaintiff was taken to the Harrisburg Hospital emergency room because no one in the DCP medical department knew how to change his super pubic catheter. At the hospital, after swabbing the catheter, it was discovered that Plaintiff had a staph infection. Plaintiff was prescribed tylenol with codeine for pain.

Although Plaintiff continued to complain about the pain while back at DCP, he states that

no one responded to him. He claims that 2 months passed before he was prescribed Uriquid to fight his infection. He claims that he filed grievances with respect to this matter, and attaches documentation to his complaint. (Id. at 16-21.) On March 26, 2013, he was transferred to the State Correctional Institution at Camp Hill Classification Diagnostic Center where he was admitted to the infirmary. He was thereafter taken to the Holy Spirit Hospital emergency room on March 29, 2013, because his catheter had not been changed in two months and had become infected.

**II.     Motion to Dismiss Standard**

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)(quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)). While a complaint need only contain "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), and detailed factual allegations are not required, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. at 556. "[L]abels and conclusions" are not enough, and a court "'is not bound to accept as true a legal conclusion couched as a factual allegation.'" Twombly, 550 U.S. at 555 (quoted case omitted).

In resolving a motion to dismiss, we thus "conduct a two-part analysis." Fowler, supra, 578 F.3d at 210. First, we separate the factual elements from the legal elements and disregard the legal conclusions. Id. at 210-11. Second, we "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Id. at 211 (quoted case omitted).

### III. Discussion

It appears that Plaintiff's inadequate medical care claims occurred at DCP both while he confined there as a pretrial detainee, as well as following his conviction. Claims of denial of medical care by pretrial detainees are "evaluate[d] ... under the Due Process Clause of the Fourteenth Amendment, which prohibits the defendants from undertaking acts that amount to punishment." Thrower v. Alvies, 425 F. App'x 102, 104 (3d Cir. 2011). However, with respect to convicted prisoners, the Eighth Amendment applies to claims of inadequate medical care. See Bell v. Wolfish, 441 U.S. 520, 535-57, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979); Hubbard v. Taylor, 399 F.3d 150, 164 (3d Cir. 2005); Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 581 (3d Cir. 2003). The Third Circuit has held that the "Due Process Clause provides pretrial detainees with at least as much protection as is afforded to prisoners raising denial-of-medical-treatment claims under the Eighth Amendment." Thrower, 425 F. App'x at 105. Courts assess inadequate medical care claims under the familiar "deliberate indifference" test set forth in Estelle v. Gamble, 429 U.S. 97, 103-05, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976), and more commonly applied in the Eighth Amendment context. Brown v. Deparlos, 492 F. App'x 211, 214-15 (3d Cir. 2012).

The Eighth Amendment "requires prison officials to provide basic medical treatment to

those whom it has incarcerated." Rouse v. Plantier, 182 F.3d 192,197 (3d Cir.1999)(citing Estelle v. Gamble, 429 U.S. 97 (1976)). In order to establish a violation based on the Eighth Amendment, "evidence must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004); Natale v. Camden County Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003).

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). The "deliberate indifference" standard is a stringent standard of fault requiring proof that a defendant disregarded a known or obvious consequence of his action. Board of County Commissioners of Bryan County v. Brown, 520 U.S. 397, 410 (1997). The defendant must be both aware of facts from which the inference could be drawn that a substantial harm exists, and he must also draw the inference. Farmer v. Brennan, 511 U.S. 825, 837 (1994). The test for whether a prison official was deliberately indifferent is whether that defendant "acted or failed to act despite his knowledge of a substantial risk of serious harm." Id. at 841. Only egregious acts or omissions can violate this standard. See White v. Napoleon, 897 F.2d 103, 108-109 (3d Cir. 1990).

A complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment . . . ." Estelle, 429 U.S. at 106. "Allegations of medical malpractice are not sufficient to establish a Constitutional violation." Spruill, 372 F.3d at 235. An inmate's disagreement with medical treatment also does not rise to the level of "deliberate indifference."

See <u>Durmer v. O'Carroll</u>, 991 F.2d 64, 69 (3d Cir. 1993); <u>Boring v. Kozakiewicz</u>, 833 F.2d 468, 473 (3d Cir. 1987).

In his motion to dismiss, Defendant Young argues that Plaintiff received ongoing medical care and treatment for his condition. This care included medical testing, medication and evaluation by not only Young, but also by nurses and outside treatment facilities. Young maintains that Plaintiff is only able to demonstrate delays in treatment or negligence. (Doc. No. 14 at 6, Def's Opp'n Br.)

In accepting the facts alleged in the complaint as true, the Court finds that Plaintiff does state a plausible claim for relief under the above standards, and will be allowed to develop the record in an attempt to support his allegations. He clearly alleges that he made complaints to Young when he arrived at DCP with respect to the post-operative urinary conditions he was experiencing which included a slow urinary flow accompanied by pain, and that his complaints were ignored. He further details the events of January 27, 2012, and pleads sufficient facts to allege a claim of deliberate indifference to his serious medical needs that day to survive a motion to dismiss. His inability to urinate at all and swollen condition was reported to Dr. Young at 6 a.m. that morning, and no efforts were made to treat him until after 9 p.m. when all attempts to catheterize him failed. When he was ultimately transported to the hospital after 11 p.m. that evening, he was on the verge of a ruptured bladder. For these reasons, and without passing judgment as to the ultimate merits of Plaintiff's claims, the pending motion to dismiss will be denied. An appropriate order follows.